## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CIVIL DIVISION

**ISEMONA MELIDOR**

                     Plaintiff,                 Case No.

        v.

                                     Trial By Jury Demanded

**OCWEN LOAN SERVICING, LLC,**

and

**DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR HSI
ASSET SECURITIZATION
CORPORATION TRUST 2006-NCI
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-NC1**,

                     Defendant.

_____/

## COMPLAINT FOR DAMAGES WITH JURY DEMAND

Plaintiff Isemona Melidor, by and through counsel, for her Complaint against Defendant Ocwen Loan Servicing, LLC and Defendant Deutsche Bank National Trust Company, As Trustee For HSI Asset Securitization Corporation Trust 2006-NCI Mortgage Pass-Through Certificates, Series 2006-NC1, states:

1.      Plaintiff Isemona Melidor ("Plaintiff" or "Melidor") is the owner of real property located at and commonly known as 401 SW 68th Terrace, Margate, Florida 33068 (the "Home").

2.      Plaintiff currently maintains the Home as her primary, principal residence and has so maintained it as such for all times relevant to the allegations of this Complaint.

3.      Defendant Ocwen Loan Servicing, LLC ("Ocwen") is the current servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      Defendant Deutsche Bank National Trust Company, As Trustee For HSI Asset Securitization Corporation Trust 2006-NCI Mortgage Pass-Through Certificates, Series 2006-NC1, ("Deutsche Bank") is the present owner and holder of the Loan. Deutsche Bank is an investor in and owner of various residential real estate mortgages throughout the United States. Upon belief, Deutsche Bank maintains agreements with various mortgage servicers across the United States to service their loans including Defendant Ocwen.

5.      Ocwen has been the servicer of the Loan, and has acted in such capacity as agent of Deutsche Bank, since April 2, 2012, when Ocwen acquired servicing rights to the Loan from non-party Chase Manhattan Mortgage, Corp. ("Chase").

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq*.

7.      This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, *et seq*., of Regulation X.

8.      This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. § 367.

## INTRODUCTION

9.      Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

10.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11.     Specifically, on January 17, 2013, the CFPB issued RESPA (Regulation X) 78 F.R. 10695 (February 14, 2013) and TILA (Regulation Z) 78 F.R. 10901 (February 14, 2013) Mortgage Servicing Final Rules, which became effective on January 10, 2014.

12.     Ocwen is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. § 1026.41(e)(4), nor does Ocwen qualify for the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

13.     Deutsche Bank is an assignee as such term is used in 15 U.S.C. § 1641.

14.     Plaintiff is asserting claims for relief against Ocwen for breaches of specific rules under Regulation X, as set forth, *infra*.

15.     Plaintiff is asserting claims for relief against Deutsche Bank for breaches of the specific rules under Regulation Z as set forth, *infra*.

16.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches of Regulation X and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

17.     Plaintiff has a private right of action under TILA pursuant to 15 U.S.C. § 641 for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

18.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintains the Home as her primary residence within this District and the events giving rise to the claims asserted herein took place in this District.

## BACKGROUND

19.     On or about May 2, 2012, Ocwen sent correspondence to Plaintiff consisting of or otherwise containing a Shared Appreciation Modification offer (the "Offer").  A copy of the Offer is attached as *Exhibit 1*.

20.     Pursuant to the terms of the Offer, Plaintiff was required to make an initial payment to servicer in the amount of $993.03, on or about May 15, 2012, and one (1) Trial Payment of $993.03 on or before June 1, 2012 ("Trial Period"). See *Exhibit 1*.

21.     Plaintiff remitted payments to Ocwen in the amount of $993.03 each on or about May 15, 2012 and June 1, 2012, and in full satisfaction of her obligations under the Trial Period. In other words, Plaintiff fully performed the Trial Period.

22.     Following the instructions contained within the Offer, Plaintiff executed the modification documents and faxed same to Ocwen on May 8, 2012. A copy of the facsimile confirmation sheet is attached as *Exhibit 2*.

23.     The effective date of the Modification was July 1, 2012 and the principal terms of the Modification are outlined as follows:

      a.   Interest Rate: 2.000%

    b.   New Principal Balance: $363,296.73

    c.   Deferred Principal Balance: $249,955.08

    d.   Interest Bearing Principal Balance: $113,341.65

    e.   First Modified Payment Due Date: July 1, 2012

    f.   Number of Monthly Payments: 280

    g.   Monthly Principal and Interest Payment: $506.89

    h.   Estimated Monthly Escrow Payment: $486.14

    i.   Total Monthly Payment: $993.03

See *Exhibit 1*.

24.     On about June 7, 2012, Ocwen sent an "Annual Escrow Account Statement" for the escrow account history from February 2012 through June 2012 stating the escrow balance ending in June 2012 was deficient in the amount of $1,902.76 (although the statement also states, "[b]ased on the above information, our records indicate that your property taxes were paid to Escrow Balance Adjustment in the amount of $-2,767.38. Loan Modification Bal Adj in the amount of $2,712.98. NewLoan Setup Balances in the amount of $31,260.82."). A copy of the **2012 Annual Escrow Account Statement** is attached as *Exhibit 3*.

25.     On the other side of the 2012 Annual Escrow Account Statement, Ocwen listed the projections for the coming year. The statement claimed:

    a.   Plaintiff's expected balance at the start of the escrow year was $-1,902.76 (despite that this escrow balance was to be included in the Modification);

    b.   The amount due July 1, 2012 was $993.04;

    c.   Plaintiff's monthly principal and interest payment was $506.89;

d.  Plaintiff's monthly escrow payment was $486.15;

A copy of the **2012 Projections for the Coming Year** is attached as *Exhibit 4*.

26.     On or about April 25, 2013, Ocwen sent an "Annual Escrow Account Statement" for the escrow account history from June 2012 through May 2013 stating the escrow balance ending in May 2013 in the amount of $1,185.19. A copy of the **2013 Annual Escrow Account Statement** is attached as *Exhibit 5*.

27.     On the other side of the 2013 Annual Escrow Account Statement, Ocwen listed the projections for the coming year.  The statement claimed:

a.  Plaintiff's expected balance at the start of the escrow year was $1,185.19

b.  The amount due June 1, 2013 was $901.99;

c.  Plaintiff's monthly principal and interest payment was $506.89;

d.  Plaintiff's monthly escrow payment was $395.10;

A copy of the **2013 Projections for the Coming Year** is attached as *Exhibit 6*.

28.     Borrower is unable to provide the 2014 Escrow History and Projections because Ocwen did not provide a copy in response to Borrower's request.

29.     Borrower does not have the 2015 Escrow History because despite requesting same from Ocwen, she was not provided the requested information.

30.     Ocwen did however provide the projections for the coming escrow year, beginning on September 1, 2015.  The statement claimed:

a.  Plaintiff's expected balance at the start of the escrow year was $4,052.70 (advising there is an escrow balance surplus of $1,688.44);

b.  The amount due September 1, 2015 was $900.93;

6

    c.  Plaintiff's monthly principal and interest payment was $506.89;

    d.  Plaintiff's monthly escrow payment was $394.04;

    e.  Servicer to deduct payment per the Automatic Payment Withdrawal form on file

A copy of the **2015 Projections for the Coming Year** is attached as *Exhibit 7*.

31.    From at least March 4, 2014 through June 2, 2015, Ocwen received by automatic debit from Plaintiff's bank account the monthly sum of $901.99.   A copy of Plaintiff's transaction history is attached as *Exhibit 8*.

32.    Yet, without prior notice or consent from Plaintiff, on or about July 2, 2015, Ocwen automatically deducted from Plaintiff's bank account the sum of $1,313.64. Additionally, on or about August 10, 2015, Ocwen automatically deducted from Plaintiff's bank account the sums of $1,313.64 and $19.50. A copy of Plaintiff's transaction history is attached as *Composite Exhibit 9*.

33.    After the August 10, 2015, automatic payment deducted from Plaintiff's bank account, Ocwen cancelled all of Plaintiff's automatic debit payments and refused to accept any payments from Plaintiff provided either by phone or mail.

34.    On September 8, 2015, Ocwen erroneous mailed a Notice of Default letter to Plaintiff, stating $13,448.57 was the total amount past due. A copy of the Notice of Default is attached as *Exhibit 10*.

35.    On September 15, 2015, Ocwen mailed a Pre-Foreclosure Referral Letter, stating "[o]ur records reflect that the last full mortgage payment date on your account was 8/28/15. The account is paid through 10/01/2014, which makes your account due from 11/01/2014." Although

the Pre-Foreclosure Referral letter acknowledged Plaintiff's August 2015 payment as the last full mortgage payment date, the letter erroneous failed to acknowledge and account for the May 2012 Modification.  A copy of the Pre-Foreclosure Referral Letter is attached as *Exhibit 11*.

36.     On September 15, 2015, Ocwen mailed a payment history in response to Plaintiff's inquiry, however, one page was missing from the payment history. A copy of the Payment history is attached as *Exhibit 12 (excluding page 12)*.

37.     On September 22, 2015, in response to the Pre-Foreclosure letter, Plaintiff disputed the alleged $13,455.10 balance due, and requested a verification of the alleged debt. In support of Plaintiff's dispute, Plaintiff notified Ocwen that on May 2012, Plaintiff entered into a loan modification agreement which Plaintiff made timely and consistent payments for each month from May 2012 thru July 2015. Further, Plaintiff notified Ocwen of its unauthorized charge automatically debited from Plaintiff's account on August 2015 and informed Ocwen of the continued failure to accept further payment from Plaintiff. A copy of the Dispute letter is attached as *Exhibit 13*.

38.     Ocwen failed to provide any response to Borrower's Dispute Letter.

39.     On November 23, 2015, a foreclosure complaint was filed against Plaintiff herein claiming a default date of November 1, 2014 on the original note dated September 1, 2005.

40.     Despite Plaintiff's best efforts, Ocwen had failed to acknowledge and correct the errors on the Loan and, instead, continued to act in furtherance and in exacerbation of such errors. Plaintiff felt the only way to compel Ocwen to act appropriately was to hire professionals to act on her behalf so she retained the services of Mortgage Servicing Protection, LLC ("MSP").

41.     On or about December 16, 2015, Plaintiff, by and through MSP, sent correspondence to Ocwen captioned or otherwise titled "Request for Information ("RFI #1"). A copy of RFI #1 is attached as *Exhibit 14*.

42.     By and through RFI #1, Plaintiff requested the identity of the owner or investor of the Loan as well as:

    a.  A payoff statement for the Loan;

    b.  Copies of any notices of changes in the ownership of the Loan;

    c.  Any call notes/logs related to Ocwen's communications with Plaintiff regarding the Loan;

    d.  Copies of any notices of mortgage servicing transfers for the Loan;

    e.  Copies of the account history;

    f.  A statement of any premiums or fees assessed to the Loan for force-placed insurance; and

    g.  A list of the loss mitigation options in which the owner or investor of the Loan participates.

See *Exhibit 14*.

43.     On or about December 29, 2015, Plaintiff retained the services of Attorney Jessica Kerr of J & M Advocacy Group, LLC ("J&M") for foreclosure defense.

44.     On or about April 6, 2016, J&M sent correspondence to Aldridge Pite, LLP, opposing counsel in the foreclosure proceeding, detailing an error in failing to apply Plaintiff's payments pursuant to the Modification. A copy of the correspondence is attached as *Exhibit 15.*

45.     On or about June 6, 2016, Plaintiff, by and through MSP, sent correspondence to Ocwen stating that Ocwen committed an error by failing to apply Plaintiff's payments pursuant to the Modification, rejecting any and all of Plaintiff's payments made after September 2015, and failing to respond to Request for Information ("NOE #1"). By and through NOE #1, Plaintiff also requested that Ocwen provide a transactional history for the Loan, correspondence sent to Plaintiff, and information requested in RFI#1. A copy of NOE #1 is attached as *Exhibit 16*.

46.     Plaintiff sent NOE #1 to the address Ocwen designated at that time as the address to which borrowers were required to send any notice of error as permitted by 12 C.F.R § 1024.35(c). See *Exhibit 16*.

47.     Ocwen received NOE #1 on June 9, 2016. A copy of the Tracking Information for NOE #1 from the USPS's website (www.usps.com) is attached as *Exhibit 17*.

48.     On July 27, 2016, Ocwen sent a response to Plaintiff's RFI enclosing pay history reflecting multiple payments made on July 27, 2015. A copy of July 27, 2016 letter and enclosed payment history are attached as *Composite Exhibit 18*.

49.     On July 22, 2016, the foreclosure complaint was voluntarily dismissed for failure to include the May 2012 Modification agreement as part of the foreclosure complaint.

50.     On or about August 30, 2016, Plaintiff, by and through J&M, sent correspondence to Ocwen captioned or otherwise titled "Notice of Error and Request for Information ("NOE#2/RFI #2" or "NOE #2" or "RFI #2"). A copy of NOE#2/RFI #2 is attached as *Exhibit 19*.

51.      Plaintiff sent of NOE#2/RFI #2 to the address Ocwen designated at that time as the address to which borrowers were required to send any request for information and notice of error as permitted by 12 C.F.R § 1024.35(c). See *Exhibit 19*.

52.      On  charges on the reinstatement /payoff quote(s); and improperly charging late fees that resulted or about September 14, 2016,  by and through J&M, Plaintiff sent correspondence to Ocwen stating that Ocwen committed an error due to its failure to accept Plaintiff's payments that conforms to servicer's requirements; failure to apply Plaintiff's payments; failure to credit Plaintiff's payments; proceeding with foreclosure in violation of 12 CFR 1024.21(f) or (j); applying misleading from Ocwen's failure to accept Plaintiff's payments ("NOE #3"). A copy of NOE #3 is attached as *Exhibit 20*.

53.      Plaintiff sent NOE #3 to the address Ocwen designated at that time as the address to which borrowers were required to send any notice of error as permitted by 12 C.F.R § 1024.35(c). See *Exhibit 20*.

54.      On or about September 28, 2016, Ocwen sent a Reinstatement Quote which included foreclosure and other fees and charges forcing Plaintiff's to pay $24,987.34 to reinstate the loan. A copy of Reinstatement Quote is attached as *Exhibit 21*.

55.      On or about September 30, 2016, Ocwen sent correspondence in response to the NOE #2 ("Response to NOE #2"). A copy of Response to NOE #2 is attached as *Exhibit 22*.

56.      Although Ocwen acknowledged the terms of the Modification, Ocwen did not send any substantive response to NOE #1.

57.      On or about October 3, 2016, Ocwen sent correspondence in response to the NOE #3 ("Response to NOE #3"). A copy of Response to NOE #3 is attached as *Exhibit 23*.

58.     Ocwen, by and through the Response to NOE #3, acknowledged the terms of the Modification and admitted that it had committed the alleged errors in the servicing of the Loan, stating that they "are in the process of performing necessary adjustments on the loan with regards to the payment(s) application and escrow activity."  See *Exhibit 23*.

59.     On or about June 28, 2017, Plaintiff, by and through The Advocacy Group, sent correspondence to Ocwen *via* Certified Mail stating that Ocwen had committed a multitude of violations in the servicing of the Loan ("NOE #4"). A copy of NOE #4 is attached as *Exhibit 24*.

60.     By and through NOE #4, Plaintiff alleged that Ocwen committed a multiple of errors all, detailed in that letter, which centered around Ocwen's improper demands for exorbitant, baseless amounts for escrow and fees and charges that were already incorporated into the modified principal balance pursuant to the Modification. See *Exhibit 24*.

61.     Ocwen received NOE #4 on June 30, 2017. A copy of the Tracking Information for NOE #3 from the USPS's website (www.usps.com) is attached as *Exhibit 25*.

62.     Ocwen sent three (3) correspondence dated August 7, 2017 separately enclosing Invoices for the subject account, a Loan Reinstatement Quote, and Payment History. A copy of the correspondence is attached as *Composite Exhibit 26*.

63.     On or about August 8, 2017, Ocwen sent correspondence to Plaintiff in response to NOE #4 (the "Response to NOE #4"). A copy of the Response to NOE #4 is attached as *Exhibit 27*.

64.     In its Response to NOE #4, Ocwen did not send any substantive response to NOE #4, and failed correct the payment and escrow account activity as previously stated. Rather Ocwen stated, "[a]s a result of the payment delinquency, fees were incurred by Ocwen that were

then assessed to the loan for repayment." Ocwen never provided any indication as to why Plaintiff's timely payments resulted in the payment delinquency.

65.     Further, in its Response to NOE #4, Ocwen states, "...the fees and expenses in the amount of $5,659.66 are outstanding." As such, "[o]ur records indicate that on 04/12/2017, the last foreclosure proceedings were initiated on the property, which are currently active." See *Exhibit 27*.

66.     On or about October 5, 2017, Plaintiff, by and through The Advocacy Group, sent correspondence to Ocwen *via* Certified Mail stating that Ocwen had committed a multitude of violations in the servicing of the Loan ("NOE #5"). A copy of NOE #5 is attached as *Exhibit 28*.

67.     By and through NOE #5, Plaintiff alleged that Ocwen committed a multiple of errors all, detailed in that letter, which centered around Ocwen's improper demands for exorbitant, baseless amounts for escrow and fees and charges that were already incorporated into the modified principal balance pursuant to the Modification. See *Exhibit 28*.

68.     Ocwen received NOE #5 on October 12, 2017. A copy of the Tracking Information for NOE #5 from the USPS's website (www.usps.com) is attached as *Exhibit 29*.

69.     On October 13, 2017, Ocwen sent a correspondence acknowledging receipt of Plaintiff's NOE#5. Ocwen advise a response would be provided within 10 business days from the date of receipt of Plaintiff's letter. A copy of Ocwen's October 13, 2017 letter is attached as *Exhibit 30*.

70.     To date, Ocwen has failed to provide a response to NOE#5.

71.     Ocwen's wrongful actions and their delay in correcting the errors as a result of such actions has directly caused Plaintiff to suffer damages.

72.     Ocwen's improper actions have caused Plaintiff significant and wholly unwarranted harm to her credit.

73.     Despite Plaintiff making timely complete payments in satisfaction of her obligations under the terms of the Modification, Defendants' filed or otherwise caused foreclosure proceedings to be initiated against her creating a black mark against Plaintiff in the public record and upon her credit report. Moreover, the improper filing of such proceedings caused Plaintiff to incur legal fees and expenses by necessitating her retainer of counsel to protect her rights.

74.     Plaintiff has incurred further fees and expenses in hiring professional help to attempt to have Ocwen correct its errors in servicing the Loan including, but not limited to fees paid to J&M and The Advocacy Group, after Plaintiff had made reasonable attempts on her own to have Ocwen correct such errors.

75.     Plaintiff has incurred costs and expenses in the sending the RFIs as well as NOE #1, NOE #2, NOE #3, NOE #4 and NOE #5 *via* Certified Mail.

76.     Ocwen's wrongful and willful actions have caused Plaintiff to suffer frustration and emotional distress driven by the fear that Ocwen's actions might lead to default and the foreclosure of the Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other persistent emotional distress.

77.     Throughout this entire ordeal, Plaintiff has merely wanted Ocwen to honor the Modification that she had entered into with Ocwen and to properly apply her mortgage payments under such so that she could cure any *legitimate* delinquency on the Loan, avoid the risk of any

potential foreclosure, and resume making timely, proper payments on the Loan to Ocwen in order to begin to rehabilitate her credit, and most importantly, remain in her Home.

78.     Ocwen's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Ocwen' obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

79.     At the time of the filing of this Complaint, Ocwen has had more than Eleven Thousand (11,000) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www .consumerfinance.gov/complaint database/).

80.     At the time of the filing of this Complaint, Ocwen has had more than Nine Thousand Six Hundred Fifty (9,650) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow accounts" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www. consumerfinance.gov/complaint database/).

## COUNT ONE: AGAINST OCWEN AND DEUTSCHE BANK
### BREACH OF CONTRACT

81.     Plaintiff restates and incorporates paragraphs 1 through 80 as if fully rewritten herein.

82.     The Loan, as modified by the Modification, is a contract between Plaintiff and Ocwen and Deutsche Bank.

83.     Ocwen and Deutsche Bank breached the contract by failing to honor its terms, failing to accept and apply payments made by Plaintiff in accordance with the terms of the contract, by claiming amounts due which were not due, by assessing fees and charges improperly, and by declaring a delinquency when there was no reasonable basis for such.

84.     Plaintiff dutifully performed her obligations pursuant to the contract by making each and every payment of amounts properly due until Defendants improperly refused further payments and by otherwise substantively meeting each and every obligation imposed by such.

85.     Ocwen and Deutsche Bank have breached the contract.

86.     Ocwen and Deutsche Bank breached the contract in bad faith. This is evidenced by the fact that the Plaintiff was double-charged for amounts past due for escrow and servicing fees that were already included in the modified principal balance and that Ocwen subsequently refused to investigate and mitigate damages despite Plaintiff's repeated pleas, requests and demands that the errors she identified should be corrected.

87.     Pursuant to the parties' contract, Ocwen and Deutsche Bank each owed Plaintiff a fiduciary duty to properly apply payments of principal, interest and escrow and to timely account to Plaintiff.

88.     Each breached that duty to Plaintiff by failing to accept and properly apply payments made, by claiming amounts due which were not due, by assessing fees and charges improperly, and by declaring a delinquency when there was no basis for such.

89.     Plaintiff has suffered actual damages as detailed, *supra*, including but not limited to, having to retain professional assistance to rectify the wrongfully claimed delinquency, defend against improperly filed foreclosure proceedings, and the fact that Ocwen falsely reported to

16

Credit Reporting Agencies that Plaintiff was delinquent reducing Plaintiff's ability to access credit and insurance on more reasonable terms, as further described.

90.     Plaintiff is entitled to actual damages, reasonable attorneys' fees, and costs, jointly and severally against Deutsche Bank and Ocwen.

## COUNT TWO: AGAINST OCWEN
## VIOLATION OF  12 C.F.R. § 1024.41

91.     Plaintiff restates and incorporates paragraphs 1 through 80 as if fully rewritten herein.

92.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

93.     12 C.F.R. § 1024.41(f)(1) provides that "[a] servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless… (i) A borrower's mortgage loan obligation is more than 120 days delinquent..."

94.     Ocwen initiated foreclosure proceedings or otherwise caused such proceedings to be initiated  against Plaintiff on or about November 23, 2015, despite the fact that Plaintiff's mortgage obligation was not 120 days delinquent as Plaintiff had remitted funds for all payments due under the Modification through August 2015 (at which point in time further payments were only not issued due to Ocwen's wrongful actions in refusing to accept and properly apply the same). Based on the agreed upon Modification, her obligations were not in default at all.

95.     Ocwen's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

96.     As a result of Ocwen's actions, Ocwen is liable to Plaintiff's for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: AGAINST OCWEN
## VIOLATIONS OF 12 C.F.R. § 1024.36

**[Failure to timely and properly respond to RFI#1 and RFI #2]**

97.     Plaintiff restates and incorporates paragraphs 1 through 80 as if fully rewritten herein.

98.     12 C.F.R. § 1024.36(a) provides that "[a] servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

99.     12 C.F.R. § 1024.36(f)(1) provides for certains types of information a servicer is not required to provide in response to a request for information, but 12 C.F.R. § 1024.36(f)(2) requires that a servicer still respond to a borrower in writing stating the specifically identified reason contained in 12 C.F.R. § 1024.36(f)(1) for the servicer's determination that they do not have to supply the requested information.

100.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

101.    12 C.F.R. § 1024.36(d)(1) provides that:

> Except as provided in paragraphs (e) and (f) of this section, a servicer must respond to an information request by either: (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for

18

the servicer's determination, and provides contact information, including a telephone number, for further assistance.

102.     Plaintiff sent RFI #1 to Ocwen at their address designated pursuant to 12 C.F.R. § 1024.36(b) on or about December 16, 2015.   See *Exhibit 14*.

103.     Ocwen failed to provide any written notice in response to RFI #1 in violation of 12 C.F.R. § 1024.36(d).

104.     As a result of Ocwen's failure to respond, Plaintiff has suffered actual damages as detailed, *supra*, including but not limited to the fact that, in order to obtain the information requested by and through RFI #1, Plaintiff was caused to incur fees and costs to draft and send NOE #1 and NOE #2/RFI #2 to Ocwen via Certified U.S. Mail that Plaintiff would not have incurred but for their failure to respond to RFI #1. See *Plaintiff's Exhibit 16* and *Exhibit 19*.

105.     Plaintiff sent RFI #2 to Ocwen at their address designated pursuant to 12 C.F.R. § 1024.36(b) on or about August 30, 2016. See *Exhibit* 19.

106.     By and through RFI #2, Plaintiff requested the following information:

> Borrowers renew their request for the items previously requested on December 16, 2015 AND June 6, 2016 including the <u>Call Notes/Communication</u>, <u>Account History</u>, <u>Periodic Statements</u>, <u>Force Placed Insurance</u>.
>
> In addition Borrowers request escrow statements for the past four (4) years.

See *id.*

107.     Ocwen sent Response to NOE #2, which was also in response to RFI #2, on or about September 30, 2016.

108.     By and through Response to NOE #2, Ocwen refused to provide the requested "Call Notes/Communications" and escrow statements.

19

109.    Ocwen failed to provide any reason delineated in 12 C.F.R. § 1024.36(f)(1) as to why they were not obligated to provide the requested escrow statements as required by 12 C.F.R. § 1024.36(f)(2).

110.    Ocwen further stated that they will not provide call transcriptions "as they are for internal purpose only". Whether or not something is for internal purpose only is not a justification delineated in 12 C.F.R. § 1024.36(f)(1) as to why they were not obligated to provide the requested escrow statements. Moreover, the request was for communication logs/notes, rather than transcripts of telephone calls, so the basis for this objection is irrelevant.

111.    In failing to provide all of the information requested by and through RFI #2 without proffering a valid justification under 12 C.F.R. § 1024.36(f)(2), Ocwen committed a violation of 12 C.F.R. § 1024.36(d).

112.    As a result of Ocwen's failure to respond, Plaintiff has suffered actual damages as detailed, *supra*, including but not limited to the fact that in order to obtain the information requested by and through RFI #1, Plaintiff was caused to incur fees and costs to draft and send NOE #4 to Ocwen via Certified U.S. Mail that Plaintiff would not have incurred but for their failure to respond to RFI #2. See *Plaintiff's Exhibit 24*.

113.    Ocwen's actions, in failing to send a full and proper response to RFI #1 and RFI #2, constitutes  two (2) clear, distinct, and separate violations of 12 C.F.R. § 1024.36(d), one (1) such violation for each of the two (2) RFIs to which Ocwen failed to remit a full and proper response.

114.    Ocwen's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

115.   As a result of Ocwen's actions, Ocwen is liable to Plaintiff's for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT FOUR: AGAINST OCWEN
### VIOLATION OF 12 C.F.R. § 1024.35(e)

**[Failure to respond to NOE #1]**

116.   Plaintiff restates and incorporates paragraphs 1 through 80 as if fully rewritten herein.

117.   12 C.F.R. § 1024.35(a) provides, in relevant part, that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

118.   12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

119.     Plaintiff sent NOE #1 to Ocwen at their address designated pursuant to 12 C.F.R. § 1024.35(c) on June 6, 2016 and Ocwen received the same on June 9, 2016. See *Exhibit 16 and Exhibit 17*.

120.     By and through NOE #1, Plaintiff alleged that Ocwen the following errors in the servicing of the Loan:

> a.   An error under 12 C.F.R. § 1024.35(b)(1) for rejecting Plaintiff's payment for the month of September 2015;
>
> b.   Thirty-Nine (39) errors under 12 C.F.R. § 1024.35(b)(2) for failing to apply Plaintiff's payments from May 2012 through August 2015 in accordance with the terms of the Modification;
>
> c.   An error under 12 C.F.R. § 1024.35(b)(9) for initiating foreclosure proceedings in violation of 12 C.F.R. § 1024.41(f);
>
> d.   An error under 12 C.F.R. § 1024.35(b)(11) for failing to respond to RFI #1 in violation of 12 C.F.R. § 1024.36.

121.     Ocwen sent a payment history for the Loan in a seemingly partial response to NOE #1 and RFI #1 on July 27, 2016, but Ocwen did not provide any further response to NOE #1 within thirty (30) business days of June 9, 2017. Nor did Ocwen send written request for any extension of time within which to supply a response to NOE #1.

122.     Ocwen's actions, in failing to respond to NOE #1 within thirty (30) day of receipt thereof, constitutes a clear violation of 12 C.F.R. § 1024.35(e).

123.     As a result of Ocwen's failure to respond, Plaintiff has suffered actual damages as detailed, *supra*, including but not limited to the fact that Plaintiff's loan remained in an

unwarranted and improper default, and Plaintiff was caused to incur fees and costs to draft and send NOE #2 to Ocwen via Certified U.S. Mail that Plaintiff would not have incurred but for their failure to respond to NOE #1. See *Plaintiff's Exhibit 19*.

124.    Ocwen's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

125.    As a result of Ocwen's actions, Ocwen is liable to Plaintiff's for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT FIVE: AGAINST OCWEN**
**VIOLATIONS OF 12 C.F.R. § 1024.35(e)**

**[Failure to fully and properly respond to NOE #2 in violation of 12 C.F.R. § 1024.35]**

126.    Plaintiff restates and incorporates paragraphs 1 through 80 as if fully rewritten herein.

127.    Plaintiff sent NOE #2 to Ocwen at their address designated pursuant to 12 C.F.R. § 1024.35(c) on August 30, 2016 and Ocwen received the same on September 2, 2016. See *Exhibit 19*.

128.    By and through NOE #2, Plaintiff alleged that Ocwen committed an error under 12 C.F.R. § 1024.35(b)(11) by failing to timely respond to RFI #1.

129.    Ocwen sent Response to NOE #2 on or about August 30, 2016.

130.    Response to NOE #2 was inadequate to comply with the requirements of 12 C.F.R. § 1024.35(e).

131.    By and through Response to NOE #2, Ocwen failed to state whether or not they determined an error occurred as required by 12 C.F.R. § 1024.35(e).

132.   Moreover, rather than correcting all of the alleged errors by supplying the information requested by and through RFI #1, Ocwen refused to provide the requested "Call Notes/Communications" and escrow statements.

133.   Ocwen failed to provide any reason delineated in 12 C.F.R. § 1024.36(f)(1) as to why they were not obligated to provide the requested escrow statements as required by 12 C.F.R. § 1024.36(f)(2) "doubling-down" and furthering the error alleged in NOE #2 rather than correct it or state why it was not an error.

134.   Ocwen further stated that they will not provide call transcriptions "as they are for internal purpose only". Whether or not something is for internal purpose only is not a justification delineated in 12 C.F.R. § 1024.36(f)(1) as to why they were not obligated to provide the requested escrow statements. Moreover, the request was for communication logs/notes, rather than transcripts of telephone calls, so the basis for this objection is irrelevant. As such, once again, Ocwen "doubled-down" and furthered the error alleged in NOE #2 rather than correct it or state a valid reason as to why it was not an error.

135.   Ocwen's actions, in failing to properly respond to NOE #2, constitute a clear violation of 12 C.F.R. § 1024.35(e).

136.   As a result of Ocwen's failure to properly respond, Plaintiff has suffered actual damages as detailed, *supra*, including but not limited to the fact that Plaintiff's loan remained in an unwarranted and improper default, and Plaintiff was caused to incur fees and costs to draft and send NOE #3 to Ocwen via Certified U.S. Mail that Plaintiff would not have incurred but for their failure to respond to NOE #2. See *Plaintiff's Exhibit 20*.

137.    Ocwen's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

138.    As a result of Ocwen's actions, Ocwen is liable to Plaintiff's for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT SIX: AGAINST OCWEN
### VIOLATIONS OF 12 C.F.R. § 1024.35(e)

**[Failure to fully and properly respond  to NOE #3 in violation of 12 C.F.R. § 1024.35]**

139.    Plaintiff restates and incorporates paragraphs 1 through 80 as if fully rewritten herein.

140.    Plaintiff sent NOE #3 to Ocwen at their address designated pursuant to 12 C.F.R. § 1024.35(c) on September 14, 2016.  See *Plaintiff's Exhibit 20*.

141.    By and through NOE #3, Plaintiff alleged that Ocwen the following errors in the servicing of the Loan:

      a.   An error under 12 C.F.R. § 1024.35(b)(1) for failing to accept Plaintiff's payment for the month of September 2015;

      b.   Thirty-Nine (39) errors under 12 C.F.R. § 1024.35(b)(2) for failing to apply Plaintiff's payments from May 2012 through August 2015 in accordance with the terms of the Modification;

      c.   Errors under 12 C.F.R. § 1024.35(b)(5) for imposing fees and costs for which Ocwen had no reasonable basis to impose, including late fees resulting from Ocwen's failure to properly apply Plaintiff's payments under the terms of the Modification.

       d.  An error under 12 C.F.R. § 1024.35(b)(9) for initiating foreclosure proceedings in violation of 12 C.F.R. § 1024.41(f);

See *id.*

142.    Ocwen sent Response to NOE #3 on or about October 3, 2016.

143.    Response to NOE #3 is wholly inadequate to comply with the requirements of 12 C.F.R. § 1024.35(e).

144.    Response to NOE #3 fails to correct nearly all of the errors alleged by and through NOE #3, including but not limited to the misapplied payments, improper fees, and refusal to accept the September 2015 payment, as would be required by 12 C.F.R. § 1024.35(e)(1)(A).

145.    Moreover, at no point in Response to NOE #3 does Ocwen provide that they performed a reasonable investigation and determined that no error occurred as would be required by 12 C.F.R. § 1024.35(e)(1)(B).

146.    In fact, it appears as though Ocwen did not perform *any* investigation, let alone a reasonable investigation, into the alleged errors in preparing the Response to NOE #3 as none of the errors were ever mentioned.

147.    Rather than address the alleged errors one way or another, Ocwen, by and through Response to NOE #3 acknowledges the existence of the Modification without making any of the necessary corrections to the Loan account without making any mention of the alleged errors whatsoever.

148.    Ocwen's actions, in failing to properly respond to NOE #3, constitute a clear violation of 12 C.F.R. § 1024.35(e).

149.    As a result of Ocwen's failure to properly respond, Plaintiff has suffered actual damages as detailed, *supra*, including but not limited to the fact that Plaintiff's loan remained in an unwarranted and improper default, and Plaintiff was caused to incur fees and costs to draft and send NOE #4 to Ocwen via Certified U.S. Mail that Plaintiff would not have incurred but for their failure to respond to NOE #3. See *Plaintiff's Exhibit* 24.

150.    Ocwen's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

151.    As a result of Ocwen's actions, Ocwen is liable to Plaintiff's for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT SIX: AGAINST OCWEN
### VIOLATIONS OF 12 C.F.R. § 1024.35(e)

**[Failure to fully and properly respond  to NOE #4 in violation of 12 C.F.R. § 1024.35]**

152.    Plaintiff restates and incorporates paragraphs 1 through 80 as if fully rewritten herein.

153.    Plaintiff sent NOE #4 to Ocwen at their address designated pursuant to 12 C.F.R. § 1024.35(c) on June 28, 2017 and Ocwen received the same on June 30, 2017.  See *Plaintiff's Exhibit 24 and Exhibit 25*.

154.    By and through NOE #4, Plaintiff alleged that Ocwen the following errors in the servicing of the Loan:

a.    An error under 12 C.F.R. § 1024.35(b)(5) for imposing improper fees and failing to provide a reinstatement figure that excludes fees that Ocwen has no reasonable basis to impose such as as litigation fees from the improper foreclosure litigation;

27

     b.  An error under 12 C.F.R. § 1024.35(b)(11) for failing to provide the communication notes for the Loan as previously requested through RFI #1, RFI #2, and NOE #3;

     c.  An error under 12 C.F.R. § 1024.35(b)(2) for failing to accept Plaintiff's payment for the month of September 2015 and thereafter;

     d.  Errors under 12 C.F.R. § 1024.35(b)(2) for failing to apply Plaintiff's payments from May 2012 through August 2015 in accordance with the terms of the Modification;

     e.  Errors under 12 C.F.R. § 1024.35(b)(5) for imposing fees and costs for which Ocwen had no reasonable basis to impose, including late fees resulting from Ocwen's failure to properly apply Plaintiff's payments under the terms of the Modification.

See *id.*

155.   Ocwen sent Response to NOE #4 on or about August 8, 2017.

156.   Response to NOE #4 fails to correct nearly all of the errors alleged by and through NOE #4, including but not limited to the misapplied payments, improper fees, and refusal to accept the September 2015 payment, as would be required by 12 C.F.R. § 1024.35(e)(1)(A).

157.   Moreover, at no point in Response to NOE #4 does Ocwen provide that they performed a reasonable investigation and determined that no error occurred as would be required by 12 C.F.R. § 1024.35(e)(1)(B).

158.     In fact, it appears as though Ocwen did not perform *any* investigation, let alone a reasonable investigation, into many of the alleged errors in preparing the Response to NOE #4 as none of the errors were ever mentioned including, but not limited to the refusal to accept payments from Plaintiff.

159.     For example, Ocwen, without addressing the adequacy of the allegedly improper fees, merely states that there are outstanding fees and expenses in the amount of $5,5659.66.

160.     Moreover, further evidencing the lack of a reasonable investigation into the alleged errors and the general failure of Ocwen to maintain adequate servicing practices, Ocwen claims by and through Response to NOE #4 that foreclosure proceedings were initiated on April 12, 2017, and "are currently active", yet Plaintiff cannot find any evidence of such proceedings in court records.

161.     Ocwen's actions, in failing to properly respond to NOE #4, constitute a clear violation of 12 C.F.R. § 1024.35(e).

162.     As a result of Ocwen's failure to properly respond, Plaintiff has suffered actual damages as detailed, *supra*, including but not limited to the fact that Plaintiff's loan remained in an unwarranted and improper default, and Plaintiff was caused to incur fees and costs to draft and send NOE #5 to Ocwen via Certified U.S. Mail that Plaintiff would not have incurred but for their failure to respond to NOE #4. See *Plaintiff's Exhibit 28*.

163.     Ocwen's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

164.     As a result of Ocwen's actions, Ocwen is liable to Plaintiff's for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT SEVEN: AGAINST OCWEN FOR VIOLATIONS OF FLORIDA CONSUMER COLLECTIONS PRACTICES ACT ("FCCPA") - FLA. STAT. § 559.72(9)

**(Attempting to enforce a debt knowing the debt is not legitimate.)**

200.    Plaintiff restates and incorporates herein all of their statements and allegations contained in the paragraphs 1 through 80 in their entirety, as if fully rewritten.

201.    At all relevant times, Ocwen was a person as defined by Section 559.55, Fla. Stat.

202.    At all relevant times, Ocwen was seeking to collect from Plaintiff a debt arising from a transaction incurred primarily for personal, family or household purposes, Plaintiff's loan for his primary residence.

203.    At all relevant times Ocwen attempted to enforce a consumer debt from Plaintiff with knowledge that the debt is not legitimate in violation of Fla. Stat. Section 559.72(9). Specifically, despite receiving notice from Plaintiff and his agent that Ocwen was attempting to collect amounts not due and owing, Ocwen failed to correct the amounts due and owing and continued to pursue collection of same.

204.    As a result of Ocwen's actions, Ocwen is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Isemona Melidor respectfully requests that this Court enter an order granting Judgment against Defendant Federal National Mortgage Association and Defendant Ocwen, Inc for the following:

A.    For actual damages, all costs and reasonable attorney fees against Defendants jointly and severally, as applicable, as to all allegations contained in Count One through Five;

B.      For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant Ocwen, Inc. for each and every violation of 12 C.F.R. § 1024.35 contained in Count Two, Count Four, and Count Five;

C.      For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant Ocwen, Inc. for each and every violation of 12 C.F.R. § 1024.36 contained in Count Three;

D.      For statutory damages of Four Thousand Dollars ($4,000.00) against Defendant Ocwen, Inc. for each and every violation of 12 C.F.R. § 1026.36(c)(3) contained in Count Six;

E.      For total statutory damages of One Thousand Dollars ($1,000.00) against Defendant, Ocwen for the violations of Section 559.72(9) contained in Count Seven;

F.      For a judgment against Ocwen, declaring that Ocwen violated the FCCPA and an injunction enjoining Defendant from future violations of the FCCPA and requiring Ocwen to correct the false credit reporting;

G.      For actual damages against Ocwen for the violations of the FCCPA including but not limited to damages resulting from credit denials and diminishment of credit rating and reputation;

H.      For all other relief this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all such claims that may be so tried.

Dated November 27, 2017.

Respectfully Submitted,

**THE ADVOCACY GROUP**
333 Las Olas Way, Suite CU3-311
Fort Lauderdale, Florida 33301
Telephone: (954) 282-1858
Facsimile: (844) 786-3694
Email: service@advocacypa.com

*/s/ Pamela Chavez*_____
Pamela E. Chavez, Esquire
FLORIDA BAR NO. 121078
Jessica L. Kerr, Esquire
FLORIDA BAR NO. 92810